UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICKI LYNN SHELLEY,<br><br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Case # 1:18-cv-697-DB<br><br>MEMORANDUM DECISION<br>AND ORDER |

## INTRODUCTION

Plaintiff Vicki Lynn Shelley ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order.

Plaintiff filed a Motion for Summary Judgment (ECF No. 8),[1] and the Commissioner moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 14). Plaintiff also filed a reply. ECF No. 15. For the reasons set forth below, Plaintiff's motion (ECF No. 8) is **DENIED**, and the Commissioner's motion (ECF No. 14) is **GRANTED**.

## BACKGROUND

On October 22, 2014, Plaintiff filed her DIB application, alleging a disability beginning February 16, 2014 (the disability onset date), based on: head injury, asthma, post-traumatic stress disorder ("PTSD"), anxiety, tremors, and neck/back problems, Transcript ((Tr.) 12, 161-62, 163-64, 183. Plaintiff's claim was initially denied on May 4, 2015, after which she requested an

---
[1] Plaintiff's brief in support of her motion was filed as a separate docket entry. *See* ECF No. 9.

administrative hearing. Tr. 71, 72, 100-01. Plaintiff's hearing was held on August 21, 2017. Administrative Law Judge Lynette Gohr (the "ALJ") presided over the hearing via video from Buffalo, New York. Tr. 15. Plaintiff appeared and testified from Jamestown, New York, and was represented by Kelly Drago, an attorney. Tr. 12-22. Jay Steinbrenner, an impartial vocational expert ("VE") also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on September 29, 2017, finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. Tr. 12-22. On May 4, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-3. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See n* (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her September 29, 2017 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2018;

2. The claimant has not engaged in substantial gainful activity since February 16, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*);

3. The claimant has the following severe impairments: asthma, post-traumatic stress disorder, anxiety, depression (20 CFR 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526);

5. The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c)[2] except the claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She cannot work at unprotected heights or around dangerous machinery. The claimant should avoid concentrated exposure to extreme heat, extreme cold, humidity, wetness, dust, odors, fumes and pulmonary irritants. The claimant is limited to simple, routine, tasks, and simple work-related decisions, minimal changes in work routines and processes with no strict production quotas;

6. The claimant has no past relevant work (20 CF'R 404.1565);

7. The claimant was born on December 23, 1962 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568);

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she is determined to also be able to do sedentary and light work. 20 CFR 416.967(c).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 16, 2014, through the date of this decision (20 CFR 404.1520(g)).

Tr. at 12-22.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on October 22, 2014, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. *Id*. at 22.

## **ANALYSIS**

Plaintiff argues two points of error: First, Plaintiff argues that the ALJ incorrectly concluded that there was no diagnosis of tremors in the record and, therefore, erred in finding Plaintiff's tremors was not a medically determinable impairment. *See* ECF No. 9 at 15-17. Plaintiff alleges this finding is inconsistent with the diagnosis of "tremor" by the ER physician at the time of her car accident. *Id*. at 16 citing Tr. 378). Plaintiff also alleges that this evidence means that she still had tremors, and the ALJ was required to find them a medically determinable impairment. *Id*. at 17. The Commissioner argues in response that Plaintiff's argument is incorrect because the ALJ did not find that there was no diagnosis of tremor in the record; rather, the ALJ found that there was "no supporting diagnosis" and no "associated diagnosis" in the record for Plaintiff's alleged symptoms. *See* ECF No. 14-1 at 18 (citing Tr. 15). According to the Commissioner, the ALJ's discussion of the evidence shows the ALJ's finding referred to the fact that there was not a diagnosis of tremors supported by objective medical evidence, as is required to show a medically determinable impairment. *Id*.

In her second point of error, Plaintiff claims that the ALJ erred in evaluating the medical opinions. *See* ECF No. 9 at 25-29. Specifically, Plaintiff argues that the opinions of Robert

5

Maiden, Ph.D. ("Dr. Maiden"), Plaintiff's treating psychologist, Patricia Soper, D.C. ("Dr. Soper"), Plaintiff's treating chiropractor, and Linda Pullman, FNP ("NP Pullman"): "(1) contain far more restrictive limitations than contained within the ALJ's RFC finding; and (2) met Plaintiff's burden to come forward with evidence establishing that she is "disabled" pursuant to the Agency's definition of that term." *Id*. at 23.

## I. There Was No Error In The ALJ's Findings Regarding Plaintiff's Impairments.

An impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An impairment is "not severe" if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities. *See* 20 C.F.R. § 404.1522; Social Security Ruling ("SSR") 96-3p, Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe, 1996 WL 374181, at *1 (SSA July 2, 1996); *Bowen v. Yuckert*, 482 U. S. 137 (1987). While the ALJ uses medical sources to provide evidence, including opinions, on the nature and severity of a claimant's impairment(s), the final responsibility for deciding severity is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). Plaintiff bears the burden of demonstrating that an impairment is severe. *See Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *Yuckert*, 482 U.S. at 146 n.5; *Woodmancy v. Colvin*, 577 Fed. App'x 72, 74 (2d Cir. 2014) ("A claimant has the burden of establishing that she has a 'severe impairment,' which is 'any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work.'") (citation and quotation marks omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. Upon review, the Court finds that the ALJ took Plaintiff's "tremors" into account when discussing plaintiff's impairments. The ALJ noted that many of Plaintiff's numerous physical, neurological, and musculoskeletal complaints were manifestations of her mental impairments. Tr. 18.

On February 18, 2014, Plaintiff was transported to the St. James Mercy Hospital ("St. James Mercy") emergency room ("ER") via ambulance following "a very low speed [car] accident." Tr. 288. Although airbags deployed, she had her seatbelt on and denied any head injury, loss of consciousness, or chest or abdominal injury. *Id*. On arrival at the ER, Plaintiff stated she was not able to move her legs, but "after a while in the emergency room she was able to move both lower extremities with some more pain in the right lower extremity." Tr. 285. The notes states that she "was somewhat hysterical." *Id*. Plaintiff claimed she had a history of head injury, but upon examination, Plaintiff's head was normal, her cranial nerves were intact, and tenderness in her right hip, right knee, and in the outer portions of her lumbosacral spine was described as slight. Tr. 289. A CT scan of her cervical and lumbar spine and x-rays of her pelvis and hips showed some osteopenia, calcification, or degeneration, but no fracture or dislocation. Tr. 285, 292, 293, 294, 295. A CT scan of Plaintiff's head was negative for intracranial hemorrhage, mass, edema, and the calvarium was intact. Tr. 296. Plaintiff was given a walker and prescribed Tramadol and Flexeril. Tr. 285. Pankajlal Shah, M.D., the ER physician, said that Plaintiff did not have any neurological deficit. *Id*.

Plaintiff first presented to her primary care physician for shaking on February 24, 2014, a few days after the accident. Tr. 350. Shortly thereafter, in March 2014, Plaintiff went to Jones

Memorial Hospital for her tremors. Tr. 429. She stated that the tremors were intermittent, but the treatments notes reflect that tremors were not observed during her stay. *Id*. At an April 2014 primary care visit, she related that she was told by her neurologist that her shaking was not "organic." Tr. 348. A later office visit in July 2014 noted that she denied any musculoskeletal complaints. Tr. 354. Her annual physical revealed no complaints with respect to a movement disorder. Tr. 315. In November 2014, Plaintiff reported that her shaking symptoms had increased, which she attributed to "a falling out with a friend." Tr. 349.

In October 2015, Plaintiff presented to the Olean General Hospital ER in a wheelchair, reporting extreme jerking movements of her neck and extremities. Tr. 450. She stated that all this began happening a week ago. Tr. 450. Plaintiff's symptoms improved, and she was discharged home. Tr. 453. The impression was Tourette syndrome and headache. *Id*.

At Plaintiff's primary care office visit on September 13, 2016, the notes reflect that Plaintiff slid from her wheelchair and commenced random writhing movements alternating with limb pounding and tensing of muscles, for a ten-minute duration. Tr. 543-44. She then spontaneously remarked that the office was finally witnessing what she had been describing all along. *Id*. Her movements subsided after she was told that they were calling an ambulance to take her to the ER. Tr. 543. The original reason for Plaintiff's visit is not recorded. NP Pullman assessed general anxiety disorder perhaps triggered by her talking to a cousin since she was estranged from her family. Tr. 544. Plaintiff was thereafter transported by ambulance to the ER at Jones Memorial Hospital. Tr. 677.

The ER record reports that Plaintiff's primary care physician called prior to her arrival and reported that she had a "shaking fit and was hyperventilating" at the doctor's office. Tr. 677. In the ER, however, she was noted to be "walking in the room." *Id*. The medical history noted

8

"anxiety" and "emotional problems," but no tremors were noted. Tr. 678. Plaintiff told providers in the ER that she had "moments of shaking and moments of the ability to lie still." Tr. 673. She reported that these usually happen at night. *Id*. Although Plaintiff reported uncontrolled shaking when on the stretcher followed by moments lying still on the stretcher, none of this activity appears to have been observed in the ER. Tr. 666. The notes reflect that her stated complaint was "seizure-like activity," and the primary impression based on her complaints was "tremor." Tr. 667. A medical workup revealed no acute issues. Tr. 681. She denied falling or feeling unsteady recently. Tr. 668. The ER discharge summary form noted she was ambulatory with a steady gait. Tr. 687.

On September 28, 2016, shortly after the September 13, 2016 "writhing" incident, Plaintiff had an orthopedic consult with orthopedist John Halpenny, M.D. ("Dr. Halpenny"). Dr. Halpenny noted that Plaintiff twisted her ankle between two cement blocks two weeks earlier. Tr. 546, 475. It is not clear if the she twisted her ankle before or after the September 13, 2016 incident. On October 12, 2016, Plaintiff again saw Dr. Halpenny, complaining of spasms and hand and ankle pain. Tr. 475-76. Although she began to have "one of her shaking spells" during the exam, she was able to get back into her wheelchair. Tr. 476. On November 2, 2016, during follow-up, Dr. Halpenny said that from several neurological exams, "there has been no exact pathology or concrete diagnosis." Tr. 474.

At her hearing, Plaintiff testified under oath that she had been in a wheel chair "all the time" since her 2014 motor vehicle accident. Tr. 38. However, medical records demonstrate that such was simply not the case. She fell off a horse, fell off a ladder, and hurt herself compiling wood. Tr. 531-532. She also testified that she had not done any horseback riding since the motor vehicle accident in February 2014 (Tr. 48), but on October 31, 2016, she was transported to the ER at St. James Mercy after falling off a horse (Tr. 460-63). During that ER visit, Plaintiff stated

9

that "she could not move [her] left leg at all, not because of any particular pain, but because it would not move." However, after a pin-prick sensory test she was able to move her foot, describing it as "a miracle." Tr. 462. She also began to complain of back pain, but the ER physician noted that he "had already of course done a formal evaluation of the back with palpation throughout. There was no tenderness whatsoever at any point, midline or paramidline." *Id*.

Plaintiff also went to St. James Mercy ER in February 2017 when she hurt her hand "compiling wood." Tr. 464. The notes described Plaintiff as "a very unusual woman." *Id*. She was alert but had her head covered with a pillow. *Id*. She was diagnosed with a sprained wrist, and x-rays were negative. *Id*. The notes also indicate that Plaintiff reported "she [was] dealing with lots of problems with movement and issues with her hand." *Id*. Two days later, and then again, four days later, Plaintiff saw Dr. Halpenny for her hand injury. Tr. 471, 472. Dr. Halpenny noted that Plaintiff had been clearing firewood when she injured her hand. Tr. 471. In May 2017, she went to her podiatrist complaining of a bruise on her hip after she fell eight feet from a ladder. Tr. 727. The notes reflect that she came in a wheelchair, but the findings indicated no gross vasomotor disturbance. *Id*. Her muscle and joint function were grossly normal. *Id*. Plaintiff also had an office visit with NP Pullman in May 2017 for a concussion. She denies "incoordination." Tr. 555. She is noted to walk with a normal gait and station. Tr. 556.

Plaintiff complained about a syncope episode in September 2015. A Holter monitor revealed no significant arrhythmias. Tr. 720. Chest x-rays for complaints of chest pain in September 2016 revealed no active pulmonary disease. Tr. 690. When seen for an ENT evaluation for tremors and dizziness in January 2015, the doctor noted her tremors but also noted that her ears were normal on the limited testing patient allowed, and she had a wide range of symptoms not related to her ears. Tr. 618. He stated that "some of these symptoms are stress and anxiety related

and secondary gain may also be an issue." The doctor notes her severe anxiety and stress following her car accident but notes she has recently started working with an attorney which may help to diminish her stress. *Id*. During an oral surgery consultation in April 2017, Plaintiff related she has episodes of "rhythmic painful movements," which were "diagnosed as anxiety attacks and not seizures." Tr. 645.

With respect to Plaintiff's history of mental health complaints, medical records indicate she had been treated and seen for anxiety for some time prior to the accident. An earlier disability psychological evaluation in August 2012 noted she suffered from anxiety related symptoms. Tr. 274. In November 2013, she was seen at St. James Mercy for a panic attack and was noted to be hyperventilating with hand spasms. Tr. 290.

She saw Gregory Fabiano, Ph.D., ("Dr. Fabiano") for a consultative exam in March 2015. Dr. Fabiano noted that her motor behavior while seated in a wheelchair was restless and trembling. Tr. 402. Plaintiff told Dr. Fabiano that sweating, dizziness, breathing difficulties and trembling occur once a day mostly at night or if she has to go somewhere, but she reported having problems with anxiety all the time. Tr. 401. Dr. Fabiano opined that Plaintiff's psychiatric problems did not appear to significantly interfere with her ability to function on a daily basis. Tr. 403. He further opined that Plaintiff could understand, follow, and perform simple directions despite a mild social functioning limitation and moderate limitations dealing with stress and maintaining attention and concentration. *Id*. The ALJ afforded Dr. Fabiano's opinion great weight because it was consistent with his own exam findings and the record as a whole. Tr. 19.

Plaintiff also saw John Schwab, D.O. ("Dr. Schwab") for a consultative exam in March 2015. The records noted she cooks, cleans twice a week, bathes daily and dresses daily. Tr. 405. Although she was in a wheelchair, she needed no help in getting on and off the exam table and

11

was able to rise from the chair without difficulty. Tr. 406. Her musculoskeletal and neurologic exams were normal. Tr. 407. The doctor notes that her physical exam was limited and appeared "not of proportion to [her] problems." Tr. 408. The ALJ afforded Dr. Schwab's asthma limitation great weight because it was consistent with the record, but he afforded little weight to Dr. Schwab's marked walking and climbing restrictions, finding such restrictions were inconsistent with Dr. Schwab's own physical exam of Plaintiff and inconsistent with the other exam findings of record. Tr. 20.

In the end analysis, there is consistent inconsistency in what the Plaintiff represents she can do and not do. The record was sufficient for a reasonable mind to conclude that Plaintiff's tremors were not medically determinable. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019). The ALJ had the benefit of the treatment records and testing, the consultative exams, and Plaintiff's own testimony, and it was the ALJ's judgment call as to the nature, origin, veracity, and severity of these reported symptoms.

## II. The ALJ Properly Considered the Medical Opinion Evidence.

Plaintiff also argues that the ALJ erred in discounting the medical opinions of Dr. Maiden, NP Pullman, and Dr. Soper, arguing that the ALJ failed to provide "good/specific/supported" reasons for discounting these opinions and because the ALJ discussed the opinions "in isolation from each other." ECF No. 9 at 25. Plaintiff contends that the ALJ's analysis failed to acknowledge that these opinions "support each other in their agreement that Plaintiff's ability to perform full-time work due to her physical and mental impairments is more limited than the ALJ's RFC describes." *Id*. The Commissioner responds that while the opinions of Dr. Maiden, NP Pullman, and Dr. Soper, consistently opined that Plaintiff was unable to work in one context or another,

their opinions "were outsized by drastic differences between their limitations and what the objective medical evidence showed." ECF No. 14-1 at 20.

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling (SSR) 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, *2 (July 2, 1996)). To determine the RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and a claimant's subjective complaints. *See* 20 C.F.R. § 404.1545. While "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013) (citation omitted); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted). The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ. *See* 20 C.F.R. §§ 404.1512, 404.1545(a)(3); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (The claimant bears both the general burden of proving disability within the meaning of the Act and the burden of proof at the first four steps.); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009).

As noted above, Dr. Maiden was Plaintiff's treating psychologist. The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is

inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

In August 2016, Dr. Maiden opined that Plaintiff had marked or extreme limitations in mental functioning. Tr. 437, 439. The Commissioner points out that the forms completed by Dr. Maiden were "attorney-supplied anxiety and depression questionnaires." ECF No. 14-1 at 21. The forms defined "extreme limitations in mental functioning" as a serious effect on mental functioning, or as a severe impairment of the ability to function, respectively. Tr. 437, 439. The ALJ afforded Dr. Maiden's opinion little weight because his treatment of Plaintiff was sporadic, with Plaintiff missing many of her appointments with him. Tr. 20. The ALJ also noted that the available treatment notes did not suggest marked or extreme limitations or a finding of disability. *Id*. As the ALJ explained, Dr. Maiden rarely made any objective exam findings demonstrating

14

marked or extreme functional limitations during the relevant time period. Tr. 20, 488, 489, 490, 522.

Plaintiff argues that the lack of objective evidence supporting Dr. Maiden's opinion was not a valid factor for the ALJ to consider because regulations preferred that medical opinions be submitted separate from treatment notes. *See* ECF No. 9 at 27. However, Plaintiff's argument fails to explain the dearth of objective exam findings in Dr. Maiden's own treatment notes or that fact that he rarely recorded anything under the objective heading of his treatment notes, instead focusing on Plaintiff's subjective complaints. *See* Tr. 488, 489, 490, 522. However, subjective complaints, or "statements about [the claimant's] pain or other symptoms will not alone establish disability." 20 C.F.R. § 404.1529(a). Rather, "[t]here must be objective medical evidence from an acceptable medical source that shows [she] [has] a medical impairment . . . [that] would lead to a conclusion that [she] [is] disabled" *Id*. As this was part of the ALJ's assessment of whether Plaintiff met the criteria for disability (Tr. 17-20), Plaintiff's argument that the ALJ should not have considered the objective medical evidence in evaluating Dr. Maiden's opinion, or the opinions of any of the other medical sources, is meritless. *See* 20 C.F.R. § 404.1527(c)(3) (2016) ("[t]he more a medical source presents relevant evidence . . . particularly medical signs and laboratory findings" to support an opinion, "the more weight we will give that medical opinion"). Although Plaintiff also claims that the ALJ failed to consider that Dr. Maiden was a mental health specialist (*see* ECF No. 9 at 26), this is incorrect. The ALJ specifically acknowledged that Dr. Maiden was Plaintiff's psychologist (Tr. 20), and her decision reflects that she evaluated the opinion under the treating physician rule. Thus, the ALJ did consider Dr. Maiden's medical specialty and properly gave the opinion little weight based on Dr. Maiden's own treatment notes which did not support his

limitations findings and based on the fact that Plaintiff had mostly normal mental status examinations. Tr. 18, 20.

Moreover, the ALJ gave Dr. Maiden treating physician status, despite the numerous times Plaintiff either cancelled or missed appointments, which Dr. Maiden failed to acknowledge in his opinion. *See, e.g.*, Tr. 521 (appointment cancelled on March 6, 2015); Tr. 486, 520 (no show on November 15, 2016); Tr. 485 (noting on April 13, 2017 that Plaintiff had "difficulty making her sessions"); Tr. 519 (no show on April 22, 2017). As the ALJ noted, Plaintiff had not attended counseling in a long time, "which is not consistent with an individual who has totally disabling mental limitations." Tr. 18-19. Because the nature, extent, and number of times a treating source has examined a claimant help determine the amount of weight to afford that source's opinion, these factors substantially discounted Dr. Maiden's opinion. 20 C.F.R. § 404.1527(c)(2)(i) (2016) ("the more times you have been seen by a treating source, the more weight we will give to that source's medical opinion"); 20 C.F.R. § 404.1527(c)(2)(ii) (2016) ("[w]e will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered . . ." in weighing a treating physician's opinion).

The ALJ also did not err in discounting NP Pullman's opinion. NP Pullman repeatedly said that Plaintiff was "totally temporarily disabled" due to her motor vehicle accident injuries. Tr. 332, 333, 334, 335, 338. The ALJ afforded Ms. Pullman's opinions very little weight because she failed to provide a function-by-function assessment of Plaintiff's abilities, and her opinions were inconsistent with the objective medical evidence. Tr. 19. As the regulations explain, "[t]he better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3) (2016).

With respect to the objective evidence to support any degree of functional limitation in Plaintiff's abilities, most of her physical exams were within normal limits (Tr. 19, 289, 374, 377, 406, 407, 462, 532, 556, 727), and she rarely showed anything other than minor abnormalities in her radiology reports (Tr. 19, 285, 292, 293, 294, 295, 296, 395, 409, 458). Moreover, as discussed above, NP Pullman appears to have doubted that Plaintiff actually experienced uncontrollable tremors. For example, in September 2016, more than two years after Plaintiff's car accident, NP Pullman noted one particular episode of "random writhing movements" subsided as soon as Plaintiff was told that she would be taken to the ER. Tr. 543. The ALJ also noted that although Plaintiff alleged she required a wheelchair, "there was no support in the record that [Plaintiff] had balance issues or any difficulty walking." Tr. 19.

NP Pullman also repeatedly opined that Plaintiff was "temporarily disabled." Tr. 332, 333, 334, 335, 338. However, this was not an opinion to which the ALJ was required to afford any special significance. 20 C.F.R. § 404.1527(d) (2016) (no special significance will be afforded to an opinion that a claimant is "disabled" or "unable" to work, as that is an issue reserved to the Commissioner). It is well settled that the matter of a claimant's disability is a matter reserved for the Commissioner. *Snell v. Apfel*, 177 F.3d 128,133 (2d Cir. 1999) ("[S]ome kinds of findings— including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner. . . . [T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability."); 20 C.F.R. § 404.1527(d) (opinions that a claimant is disabled or unable to work are opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case).

Furthermore, NP Pullman's opinion that Plaintiff was "temporarily disabled" (Tr. 332, 333, 334, 335, 338) actually supported the ALJ's finding of non-disability because opinions of partial

or temporary disability are not indicative of complete disability, which is the requirement of Social Security law. *See Verginio v. Apfel*, No. 19-CV-456, 1998 WL 743706, at *8 (N.D.N.Y. Oct. 23, 1998) (unpublished) ("[p]laintiff's doctors consider him partially disabled, but continually advise him to seek vocational therapy and light duty work. This demonstrates that even plaintiff's doctors do not believe that plaintiff is totally disabled"). The ALJ, therefore, properly afforded NP Pullman's opinion very little weight.

Finally, the ALJ also properly discounted the opinion of chiropractor Dr. Soper, who opined in May 2017 (also in an attorney-supplied questionnaire) that Plaintiff was unable to perform even sedentary work and would be off task greater than 25 percent of a typical workday. Tr. 730-33. The ALJ noted that Dr. Soper's opinion was not supported by the objective medical evidence. Tr. 20. As discussed above and noted by the ALJ, there is little exam evidence or diagnostic imaging—including in Dr. Soper's own treatment notes (*see* Tr. 303-04)—showing that Plaintiff had disabling impairments. Tr. 20. The ALJ also noted that, as a chiropractor, Dr. Soper was not an acceptable medical source and, therefore, she was not qualified to give evidence demonstrating disability. *See* 20 C.F.R. § 404.1521 ("a physical or mental impairment must be established by objective medical evidence from an acceptable medical source"); 20 C.F.R. § 404.1502(a) (the list of acceptable medical sources does not include chiropractors or nurse practitioners). As discussed above, the evidence shows that Plaintiff had relatively minor limitations, and Dr. Soper's treatment notes do not substantiate that Plaintiff is limited to less than sedentary work.

In sum, the fact that the opinions of Dr. Maiden, NP Pullman, and Dr. Soper are consistent does not make them accurate. The ALJ's discounting of these opinions is supported by substantial evidence in the record.

Furthermore, as discussed above, the ALJ also considered the opinions of Drs. Schwab and Fabiano in reaching her RFC finding. Although Plaintiff argues that the ALJ erred in evaluating Dr. Fabiano's opinion because Dr. Fabiano was unable to review the full record and because he was not a treating physician (*see* ECF No. 9 at 29), the Court finds that the ALJ properly assigned the opinion great weight. Dr. Fabiano conducted an in-person assessment of Plaintiff that included a full evaluation of her mental functioning and a clinical discussion of her mental health history, education, and activities of daily living. Tr. 400-04. "Generally . . . more weight [is given] to the medical opinion of a source who ha[s] examined [the claimant] . . . ." 20 C.F.R. § 404.1527(c)(1) (2016). Furthermore, "[t]he more a medical source present[ed] relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [that is] give[n] that medical opinion." 20 C.F.R. § 404.1527(c)(3) (2016). Additionally, Dr. Fabiano, as a consultative physician, is among those "highly qualified physicians, psychologists, and other medical specialists who [are] also experts in Social Security disability evaluation," 20 C.F.R. § 404.1527(e)(2)(i) (2016). Accordingly, the ALJ correctly afforded his opinion great weight, despite his status as a non-treating physician.

The Court finds that the ALJ fully and fairly considered Plaintiff's case. The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). Thus, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). In this case, the evidence supports the ALJ's decision. and the Court finds that the ALJ considered such and will not disturb her assessment.

## CONCLUSION

Plaintiff's Motion for Summary Judgment (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE